UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 10-41-JMH |
| ) | |
| v. ) | |
| ) | |
| DEREK ALBERT CAPOZZI, ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. ) | |
| ) | |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendant's Memorandum In Support of Duress Defense [DE 58] and the United States' Response [DE 59].[1] Defendant argues that it should provide an instruction to the jury at the conclusion of the trial in this matter as to the "medical necessity" of his escape. In its Response, the United States argues that Defendant cannot produce evidence to support a prima facie case for the defense of necessity and that this Court should find that Defendant Capozzi cannot make a showing that he is

---

[1] Defendant has generally referred to the affirmative defense of "duress" throughout the proceedings but conceded during the hearing, through counsel, that the affirmative defenses of necessity and duress are practically one and the same in the case law. *See United States v. Bailey*, 444 U.S. 394, 410-11 (1980). The Court has considered the matter and believes that "necessity" is the better description of the defense raised in this case, on these facts. The analysis is, however, roughly the same, *see id.*, a matter of "six or one-half dozen" as the Court termed it during the October 13, 2010, hearing.

entitled to a defense of necessity. The Court ordered that Defendant appear on October 12, 2010, to make a *prima facie* showing concerning evidence which he would be prepared to introduce on all of the elements of the defense of necessity.

At the appointed time, Defendant appeared by and with counsel and requested a one day continuance to permit further preparation. The Court granted that request, and the parties appeared on October 13, 2010, for further proceedings. Based on the arguments and averments presented in the parties' briefs, as well as the arguments and averments presented before this Court during the hearing on this matter, the Court issued an oral ruling in which it held that Defendant Capozzi had failed to make a prima facie showing of each of the five elements of a necessity or duress defense. The Court enters this Memorandum Opinion and Order to memorialize that ruling.

**I.  Background**

In an Indictment dated April 22, 2010, Defendant Capozzi was charged with violation of 18 U.S.C. § 751(a) on April 15, 2010, for knowingly escaping "from the custody of the Grayson County Detention Center officials acting at the direction of the United States Marshal Service, the Attorney General's authorized representative" while serving a criminal sentence. For the purposes of the inquiry before this Court, no one has seriously disputed that Defendant Capozzi was in custody or that he knowingly

escaped from custody.

In Defendant Capozzi's Memorandum in Support of the Defense of Duress, filed by counsel, Defendant offers that he believed that on April 15, 2010, there was a present, imminent, and impending threat of death or serious bodily injury to himself by virtue of a condition of his heart for which he needed medical treatment but had not been provided despite repeated requests to prison officials. Specifically, Defendant avers that he was stabbed in the chest while an inmate at a facility in Victorville, California. He states that, as a result, he suffers from various cardiac conditions, including post-traumatic arteriovenous fistula.[2] According to Defendant, he has been advised that he will need further treatment for his heart, including his aortic valve, most recently by Dr. Roberta Erena in Somerset, Kentucky, on April 15, 2009. Since that time, on June 29, 2009, Defendant has been seen at the Central Baptist Hospital where he underwent certain procedures but where he did not receive the recommended repair of his heart.

Defendant Capozzi has also submitted a document, which is styled as an "Affidavit" but which takes the form of a declaration under penalty of perjury, in which he sets forth a recitation of evidence that he believes could be obtained and presented at trial.

---

[2] Defendant also states that he suffers from a number of other ailments, having been diagnosed with chronic Hepatitis C, dental caries, pulpitis, and Axes I, IV, and V mental disorders.

That evidence would include the records of the diagnoses of his heart condition, his treatment history, and the recommendations for further treatment made by various medical providers, including cardiac surgeons. It would also include documentation of "sick call" and other requests for medical care and treatment for his heart condition made to the Bureau of Prisons during Defendant Capozzi's confinement over the course of more than a year.

Defendant Capozzi avows that there are witnesses from each facility where he has been incarcerated who would testify that they observed Defendant Capozzi requesting and being denied treatment for his heart condition. He further states that he and his family have sought the assistance of United States Senator John Kerry, in Defendant Capozzi's home state of Massachusetts, as further evidence of his efforts to obtain the treatment recommended for him but allegedly denied to him while incarcerated.

During the hearing, Defendant Capozzi again represented, by and through the statement of his counsel, that he had repeatedly requested medical treatment for his heart condition while incarcerated prior to April 15, 2010, using the request and grievance forms available to him. These requests include the filing of some twelve to fifteen Forms BP-8, BP-9, BP-10, and BP-11 according to his "Affidavit." According to Defendant Capozzi, in response to those grievances, he was advised time and time again that the requested treatment would be forthcoming, only it never

actually was provided.  Rather, he found himself being transferred from one prison facility to another.

Defendant Capozzi explained in his Memorandum and at the hearing, through counsel, that he intended to escape from custody to seek medical care and that he took the opportunity which presented itself to escape on April 15, 2010, so that he could seek medical care for his heart condition.  With respect to his ability to follow through with that intent, Defendant Capozzi offered to the Court through his counsel that, when he "rolled out" of the back of the van in which he was transported, the officers in charge of his transport fired on him.  As a result, he explains that he was afraid to show himself or seek medical care in the three days he was on the loose for fear that he would be taken into custody or fired upon again.  Finally, he explained that seeking medical care was difficult for, when he first escaped, he was not even sure of where he was nor was he familiar with Woodford County, Kentucky, where he found himself on that fateful day.

## II. Discussion

With regard to a defense of necessity or duress, this Court has:

> . . . [a] duty to require a *prima facie* showing by the defendant that he can produce evidence on each of the elements of the defense. A trial judge does not "invade" the province of the jury when determining, as a preliminary matter, whether a defendant has met the burden of introducing sufficient evidence on each of the elements of an

5

asserted defense; here, duress.

*United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005) (holding that trial court correctly determined prior to scheduled trial that defendant had failed to make prima facie case of showing of duress and was barred from presenting any evidence of duress to jury). "Where 'an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense.'" *Id.* at 468 (quoting *United States v. Bailey*, 444 U.S. 394, 416 (1980)). "When, as in this case, the issue is raised in a pretrial motion, the rule is . . . [that] if the defendant's proffered evidence is legally insufficient to support a duress defense, the trial judge should not allow its presentation to the jury."[3] *Id.* (*citing United States v. Villegas,* 899 F.2d 1324, 1343 (2d Cir. 1990); *United States v. Campbell,* 675 F.2d 815, 819-21 (6th Cir. 1982)).

To state a *prima facie* case of necessity or duress, a

---

[3] Fed. R. Crim. P. 12(b) provides that "[a] party may raise by pretrial motion any defense, objection or request that the court can determine without a trial of the general issue," as the United States has done here in its Response to Defendant's Memorandum In Support of Duress Defense [DE 58, 59]. Pretrial proceedings on such motions are in keeping with Fed. R. Crim. P. 2, which states that the Rules "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, *and to eliminate unjustifiable expense and delay*." (emphasis added).

defendant must offer some evidence in support of each of the following five elements:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;
>
> (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Johnson*, 416 F.3d at 468 (quoting *United States v. Riffe,* 28 F.3d 565, 569 (6th Cir. 1994)). The Court considers each element in turn.

As an initial matter, the Court is mindful that Defendant has requested more time to gather together the evidence of his heart condition that he would offer to demonstrate that he "was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." Rather than grant that continuance, the

7

Court elects to assume, for the purposes of this inquiry, that Defendant Capozzi could present evidence to satisfy the first element. The Court shall assume that he could demonstrate a well-grounded belief that his need for treatment for his heart condition was so dire as to induce a well-grounded apprehension that he would die or suffer serious bodily injury in the absence of that treatment.[4]

Further, Defendant Capozzi did not choose to be in custody and, thus, place himself in the position of having to request and be denied what he considers to be life-saving medical treatment from the powers that be at the Bureau of Prisons. This fact goes to the second element, which requires that a defendant "not recklessly or negligently place[] himself in a situation in which it was probable that he would be forced to choose the criminal conduct." The Court concludes that these facts are likely sufficient to make a prima facie case for the second element of the defense of necessity.

---

[4] Having made this assumption, the Court notes that a reasonable juror might conclude that the perceived threat was not "present, imminent, and impending" so as to induce "a well-grounded apprehension of death or serious bodily injury" because the Bureau of Prisons had agreed to the treatment – there was no question of what would happen, only when it would happen. Further, one might reach the same conclusion after looking at the medical records provided to the Court during the hearing and note that Defendant's treating physicians felt there was time to review his case "in further detail before taking him to surgery" and "to review his case further and come up with a plan." The Court is not, however, going to weigh these facts, but will evaluate the matter as set forth above.

That said, the fact of his involuntary confinement does not explain why he did not take up all reasonable, legal alternatives that he had prior to violating the law by effecting an escape. Specifically, he has presented no evidence that, when the approved treatment was not forthcoming, he sought help by the most classic of legal means – recourse to the courts and the legal process. The Court theorizes that Cappozi might have sought relief prior to resorting to escape, if not by further resort to the grievance procedures available to him in the Bureau of Prisons, then by seeking a writ of mandamus, filing a *Bivens* action, or, possibly, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[5] Thus, he fails to meet the third element of the prima facie case for Defendant Capozzi cannot demonstrate that he did not have "a chance both to refuse to do the criminal act and also to avoid the threatened harm" in the time leading up to his escape on April 15, 2010.

---

[5] Defendant Capozzi, through his counsel, has stated that he obtained through the grievance procedure the result that he desired, namely a recognition that he needed a surgery on his heart and a promise that it would be forthcoming. Any failure to provide that promised treatment was the alleged impetus for his escape. That said, the failure to provide the promised treatment might have been subject of a further grievance, perhaps expedited administrative proceedings, based on the alleged immediacy of the need for treatment. Alternatively, the promise to provide treatment which was then delayed could constitute a final decision of the Bureau of Prisons subject to judicial review. The alternative, that the situation was subject to ordinary grievance procedures would suggest a lack of exigency that this Court cannot presume, having accepted that Defendant Capozzi can demonstrate the first element of a necessity defense.

Also, notably absent is any indication as to why Defendant thought he would be able to obtain medical treatment when he escaped, being first and by his own admission totally ignorant of where he was and, secondly, unfamiliar with Woodford County, Kentucky, where he found himself. Further, there has been no indication that he sought out locations where he might seek medical care or any avowal that he looked for a hospital, doctor's office, or other facility where he might seek medical treatment in the area where he found himself during his three days of freedom. There is no indication that he attempted to telephone anyone for aid or asked someone in person for assistance in finding medical care – or that he even thought about doing so. Moreover, there has been no explanation as to why he believed that escape would provide him sufficient opportunity to seek competent medical care without further interference by BOP officials or law enforcement officers, given that he must have known that he would be the subject of an extensive manhunt. In other words, Defendant Capozzi has not established a prima facie case of a direct causal relationship that may be reasonably anticipated between escape and seeking treatment for his heart condition.[6]

---

[6] During the hearing, the Court rejected the United States' suggestion that no one would anticipate a causal relationship between escape and avoiding any danger to Defendant's life posed by his untreated heart condition because the escape itself could exacerbate or pose a greater risk to Defendant due to his heart condition itself. That said, the Court has concluded upon reflection that there is an absence of causal relationship between

Finally, the Court is not persuaded that Defendant can make a prima facie case for the fifth element of the defense – that defendant did not maintain the illegal conduct any longer than absolutely necessary. Defendant has taken the position that three days of absence from federal custody is not the same as "months and months" of being on the lam. He has, however, provided the Court no indication of how he believed that anything less than an indefinite period of freedom from incarceration was necessary to seek treatment for his heart condition and, thus, end the perceived threat to his life. Nor has he indicated that he sought to or ever intended to surrender to authorities, which would be the only way that he could cease the illegal conduct in this situation.

At the end of the day, the Court has assumed or Defendant has demonstrated that he could present evidence that would make, at best, a prima facie case for two of the five elements of the necessity defense. Again, the Court assumes for the purposes of this inquiry that Defendant Capozzi can demonstrate that he "was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury" during his incarceration due to his

---

escape and an opportunity to seek competent medical care, i.e., avoid the perceived harm to his heart, where Defendant Capozzi had no plan for seeking help, did not actually seek help, and must have known that he would be subject to further interference with that errand by law enforcement officers, given that he must have known that he would be the subject of an extensive manhunt.

untreated heart condition.  Further, as Defendant did not chose to be in custody, he has presented facts which could demonstrate that he did "not recklessly or negligently place[] himself in a situation in which it was probable that he would be forced to choose the criminal conduct."  The Court concludes however, that no reasonable jury could conclude on the facts as avowed or otherwise set forth by Defendant that he lacked a reasonable, lawful alternative to escape, that there was a direct causal relationship which could be reasonably anticipated between his escape and treatment for his heart condition, or that he did not maintain the illegal conduct any longer than absolutely necessary.  The United States' request to exclude evidence in support of the necessity defense shall be granted, and Defendant Capozzi's request for a jury instruction on the defense of necessity shall be denied.

Accordingly, **IT IS ORDERED:**

(1)  that the United States' motion to exclude an instruction on the affirmative defense of necessity or duress is **GRANTED**;

(2)  that  Defendant Capozzi's request for a jury instruction on the the affirmative defense of necessity or duress is **DENIED** and no such instruction shall be provided to the jury during the trial of this matter;

(3)  that, as evidence offered solely in support of an affirmative defense of necessity or duress is irrelevant with respect to the issues which remain for trial, such evidence is

excluded from the trial of this matter.

This the 15th day of October, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge