UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 10-41-JMH |
| ) | |
| v. ) | |
| ) | |
| DEREK ALBERT CAPOZZI, ) | |
| ) | **MEMORANDUM OPINION** |
| Defendant. ) | |
| ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon Defendant Capozzi's Motion to Dismiss Due to Double Jeopardy [DE 89]. The Court has had the benefit of Defendant's Motion, as well as the United States' Response [DE 94], stating its objections, and the Defendant's Reply in further support of his Motion. Additionally, the Court heard oral arguments during a hearing on November 29, 2010. At the conclusion of that hearing, the Court denied Defendant's Motion. This Memorandum Opinion memorializes that decision.

**I.   BACKGROUND**

In the original indictment [Record No. 1], dated April 22, 2010, Defendant Capozzi was charged with violation of 18 U.S.C. § 751(a), as follows:

> 1.   The Grayson County Detention Center at Litchfield [*sic*], Kentucky, had a contract with the United States Marshal Service [*sic*] to hold and house federal inmates which were in the custody of the Attorney General of the

> United States.[1]
>
> 2. Included in the contract between the United States Marshal Service [*sic*] and the Grayson Count [*sic*] Detention Center, the Grayson County Detention Center provided transportation of federal inmates from the Grayson County Detention Center to the United States Marshal Services' [*sic*] air transportation aircraft at the Bluegrass Airport at Lexington, Kentucky.
>
> On or about April 15, 2010, in Woodford County, in the Eastern District of Kentucky,
>
> DEREK ALBERT CAPOZZI
>
> did knowingly escape from the custody of the Grayson County Detention Center officials acting at the direction of the United States Marshal Service [*sic*], the Attorney General's authorized representative, when such custody was by virtue of a judgment and commitment order for his conviction of a criminal offense . . . .

*Id.*

Defendant made Requests for Discovery on April 28, 2010. [*See* DE 11, 12, and 13.] Trial was commenced on October 19, 2010. On October 20, 2010, Defendant Capozzi requested a mistrial, arguing that the prosecution had failed to timely disclose evidence of the contract between the United States Marshals Service and the Grayson County Detention Center. Counsel for Defendant Capozzi, Stephen D. Milner, represented that, notwithstanding his client's April 28,

---

[1] This is contrary to Defense Counsel Milner's assertion during the hearing that the indictment indicated that the contract was made by and between the United States Marshals Service for the Eastern District of Kentucky and the Grayson County Detention Center.

2010, Requests for Discovery, counsel for the United States of America provided him with a copy of a contract between the Grayson County Detention Center and the United States Marshals Service for the first time during the first day of trial.

Nonetheless, Milner had been able to meet with Defendant Capozzi at the courthouse on October 19, 2010, to discuss the contract with him. Later on October 19, however, an agent of the United States Marshals Service provided Milner with another copy of the contract containing additional materials. Defendant Capozzi was no longer in the courthouse and Milner could not consult with him expeditiously about the new version of the document. Milner consulted with his client about that new document for the first time on the morning of October 20, 2010, before the matter was reconvened.[2]

When the matter was reconvened outside the presence of the jury, the Court heard Defendant Capozzi's oral Motion for a Mistrial on the grounds that the United States had failed to produce these records at any time prior to trial. In his written Motion, filed later that day, he argued that he had been prejudiced because his defense, prior to trial, was that no contract existed

---

[2] After the hearing on the Motion for Mistrial, counsel for the parties provided this Court with a parcel of materials, including the contract between the Marshals Service and the Detention Center and the writ of habeas corpus ad testificandum pursuant to which Defendant Capozzi was transported at the time in question. Those materials were filed under seal in the record of this matter by order of the Court.

3

and that a jury could have believed, even in the face of testimony about the existence of an agreement, that one did not exist and, thus, that Defendant Capozzi was not in federal custody. At the conclusion of the hearing on that Motion, the Court recessed trial for the day so that the United States could produce any additional documentation to counsel for Defendant Capozzi by a time certain, avoiding piecemeal production, and so that Defendant Capozzi could consult with his counsel regarding the additional documents.

During the afternoon of October 20, 2010, the parties jointly provided the Court with a copy of all documents so produced, which the Court placed in the record of this matter under seal. That set of documents included a copy of a duly executed Writ of Habeas Corpus Ad Testificandum dated March 10, 2010, entered in the matter of *United States v. Cramer*, 6:09cr64, and pursuant to which Defendant Capozzi had been transported to the Eastern District of Kentucky for his testimony in that matter on April 7, 2010.[3] *United States v. Cramer*, 6:09cr64, DE 26 (Ex Parte Order and Writ of Habeas Corpus Ad Testificandum) and DE 57 (Exhibit and Witness List). The Ex Parte Order and Writ of Habeas Corpus Ad Testificandum ordered the Warden of the United States Penitentiary Lewisburg, "having custody ... over Derek Capozzi . . . [to] deliver [him] into the custody of the United States Marshal, or his

---

[3] That document was under seal until October 20, 2010, in *United States v. Cramer*, 6:09cr64, but has since been unsealed.

4

duly-authorized designee, on the dates and times as reasonably necessary to permit [his] attendance at the trial of Defendant Christopher Cramer . . . in London, Kentucky." *United States v. Cramer*, 6:09cr64, DE 26 at 1. Rather than declare a mistrial or dismiss the indictment, the Court continued the jury trial until October 21, 2010, in order that Defendant Capozzi and his counsel could review the documents and evaluate their use during the course of the trial.

The trial resumed on October 21, and, on the same day, the parties rested and offered their closing arguments. All told, over the course of three days, the presentation of evidence on direct and cross-examination lasted for approximately two hours and ten minutes of time in court, and opening and closing arguments consumed approximately forty minutes of trial time. The jury then retired to deliberate and deliberated for approximately five hours. During that time the jury sent the Court several notes. Among other things, the jury requested a copy of the contract between the United States Marshals Service and the Grayson County Detention Center, which was not entered into evidence, and a transcript of the testimony of Thomas Edwin Clay, which concerned that contract. As the contract was not entered into evidence, the Court indicated to the jury that it could not be provided. No transcript of the trial testimony was available at the time of the jury's request, so the Court indicated to the jury that no transcript of Mr. Clay's

testimony could be provided to them.

Two of the notes indicated that the jury was unable to reach a unanimous decision. After the first such note, the Court, having consulted with the parties, offered the jury the *Allen* charge as a supplemental instruction. After the second note, which indicated that the jury remained deadlocked and unable to reach a verdict, the Court again consulted with the parties. When queried by the Court anyone could suggest an alternative to the declaration of a mistrial, neither party had a response. Defendant, however, maintained his objection to the declaration of a mistrial. After carefully considering the facts before it, including the results of a poll of the jury, the Court ultimately declared a mistrial on October 21, 2010, setting the matter for a new trial at a later date.

Since that time, the Grand Jury has returned a superseding indictment [DE 91], charging that:

> On or about April 15,2010, in Woodford County, in the Eastern District of Kentucky,
>
> DEREK ALBERT CAPOZZI,
>
> having been lawfully committed to the custody and confinement of the Attorney General of the United States, or his authorized representative, by virtue of his felony conviction in a criminal case in the United States District Court for the District of Massachusetts in August of 2005, and while in such custody he was being transported pursuant to a Writ of Habeas Corpus Ad Testificandum issued by the United States District Court for the Eastern District of Kentucky, did

6

>knowingly escape from such custody, in violation of 18 U.S.C. § 751(a).

The new trial in this matter is currently set for December 21, 2010.

**II. DISCUSSION**

Defendant argues that the indictment in this matter should be dismissed on the ground that it would violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution to retry him following the Court's declaration of a mistrial on October 21, 2010.

"[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Richardson v. United States*, 468 U.S. 317, 324 (1984), quoting *Arizona v. Washington*, 434 U.S. 497, 509 (1978). As a general rule, there is no double jeopardy bar when a jury cannot reach a verdict. Rather, "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson*, 468 U.S. at 325. "[T]he Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it

is unable to agree." *Id.* at 326.

Defendant argues, however, that the double jeopardy bar applies in this instance because the mistrial could have been avoided. He theorizes that this might have been done, either by the exclusion of the evidence of the contract between the United States Marshals Service and the Grayson County Detention Center which was the subject of both his oral and written Motion to Dismiss, Declare a Mistrial or to Strike Testimony and Documentary Evidence of Contract Agreements and to Exclude from Evidence Ex Parte Order [DE 78] or the provision of a curative instruction based on *McCue* once the jury indicated that it was deadlocked. The Court is not persuaded for the reasons which follow.

**A. Exclusion of Evidence of Contract**

With respect to his first argument, Defendant effectively invites the Court to reconsider its earlier decision to deny his Motion to Dismiss, Declare a Mistrial or to Strike Testimony and Documentary Evidence of Contract Agreements and to Exclude from Evidence Ex Parte Order. The Court, however, is not persuaded that it erred when it decided not to dismiss the original indictment, now superseded, due to perceived prejudice as a result of the United States' tardy provision of documents. When asked to declare a mistrial and dismiss the original indictment on those grounds during the first trial of this matter, the Court opted, instead, to give Defendant and counsel a day to digest the information. In

8

this way, the Court permitted a cure of any prejudice that might have resulted from a failure to provide the documents at an earlier time. The Court stands by that decision. The Court also stands by its conclusion that the material provided was of marginal relevance to the evaluation of that which had to be demonstrated at trial – so marginal, in fact, that neither Capozzi's initial counsel or replacement counsel insisted upon receiving it during discovery.

With respect to his earlier Motion to Dismiss, Declare a Mistrial or to Strike Testimony and Documentary Evidence of Contract Agreements and to Exclude from Evidence Ex Parte Order, Defendant argued that he was prejudiced in the preparation of his defense because, without the contract materials and the Ex Parte Writ, he believed that he could demonstrate to the jury that he was not in the custody of the United States Attorney General, as required by 18 U.S.C. § 751(a), at the time of his escape from the van driven by Grayson County Detention Center officers.[4] He

---

[4] The Court presumed during trial that Defendant sought relief solely under the provisions of Fed. R. Crim. P. 16. Defendant did not specifically request relief under *Brady v. Maryland*, nor does the Court believe that he could have done so for the evidence in question was not exculpatory. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (stating that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). If anything, the evidence which was the subject of the earlier arguments tended to demonstrate that Defendant was in federal custody and, thus, prove an element of the offense set forth in 18 U.S.C. § 751(a). That said, even if the evidence were exculpatory in some way, relief under *Brady* would have been unavailable. As a general matter, *Brady* does not apply

9

reasoned this because there was, so far as he knew until their disclosure, no written contract between the United States Marshals Service for the Eastern District of Kentucky and the Grayson County Detention Center. It came as no surprise, then, that he also claimed to be prejudiced by the late breaking disclosure of the Ex Parte Writ because it included "prejudicial . . . language" since it permitted a "duly-authorized designee" of the United States Marshal to have custody of Defendant Capozzi. The Court was and remains of the opinion that these documents were subject to production upon Defendant's request under Fed. R. Crim. P. 16(a)(1)(E)(i) and (ii) since they were, arguably, material to preparing the defense and they were ultimately items that the government intended to use in its case-in-chief. Fed. R. Crim. P. 16(d)(2) provided this Court with a number of options that it could pursue, all in its discretion, when a party fails to comply with a discovery order. "[T]he court may order . . . that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; . . . grant

---

to delayed disclosure, but only to a complete failure to disclose. *See United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002). "If previously undisclosed evidence is disclosed, as here, during trial, no Brady violation occurs unless the defendant has been prejudiced by the delay in disclosure." *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Defendant Capozzi has not articulated and cannot articulate any prejudice which has never been able to articulate any prejudice which resulted from the delayed disclosure of the contract materials or the Ex Parte Writ for he was provided a substantial opportunity to review the materials and consult with his counsel after their disclosure.

a continuance; . . . prohibit that party from introducing the undisclosed evidence; . . . or enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2); *see United States v. Glover*, 846 F.2d 339, 342 (6th Cir. 1988); *United States v. Maples*, 60 F.3d 244, 246 (6th Cir. 1995) (finding abuse of discretion to suppress videotape withheld by prosecution during discovery instead of less stringent sanctions under Fed. R. Crim. P. 16(d)(2) where the failure to disclose was not deliberate, there was no prejudice to defendant, and there was ample time for defendant to consider the tape in time for trial). In this instance, the Court concluded that something less than the nuclear option of declaring a mistrial or dismissing the indictment was in order. Nor did the Court find that it was necessary to strike testimony arising from or documentary evidence of the contracts or the Ex Parte Writ, although the Court did hold the United States to its statement during opening argument that it would not submit the actual contract into evidence. There was no evidence of purposeful misconduct or bad faith action on the part of the prosecution in this matter in failing to disclose these materials prior to trial. Thus, the Court elected to provide Defendant Capozzi and his counsel a substantial opportunity over the course of a recess of this trial to review the materials. In this manner, the Court cured any prejudice which resulted from the delayed disclosure of these materials. The Court reached the decision that this would be

an ample remedy, in part, because the evidence in question was of limited use in the defense of this matter and of limited quantity so as to make it subject to a straightforward review.

As this Court has articulated on other occasions during these proceedings, the trial of a matter under 18 U.S.C. § 751(a) does not present the complex questions Defendant Capozzi attempts to raise in this defense. The Supreme Court makes clear that

> [t]hese cases present a good example of the potential for wasting valuable trial resources. In general, trials for violations § 751(a) should be simple affairs. The key elements are capable of objective demonstration.

*United States v. Bailey*, 444 U.S. 394, 417 (1980).

It was "frivolous" for Defendant Capozzi to argue that the absence of the contract or even the terms of the contract could have shown that he was not being held in federal custody, and it remains so. *United States v. McCue*, 643 F.2d 394, 395 (6th Cir. 1981). This is because Defendant Capozzi was present in the Eastern District of Kentucky by virtue of the Ex Parte Writ entered in *Cramer*. The Sixth Circuit has held that there is no factual issue as to whether an inmate is in the custody of the Attorney General at the time of an escape when he has previously been committed to the custody of the Attorney General by virtue of a conviction and escapes during a transfer pursuant to a Writ of Habeas Corpus Ad Testificandum. *Id*. Defendant Capozzi was in the custody of the Attorney General, as contemplated by § 751(a)

regardless of whether there existed a written contract between the United States Marshals Service and the Grayson County Detention Center, so long as he was present where he was at the time of his alleged escape by virtue of that Writ. *Id.* (stating that "[t]his is not a factual question to be resolved by the jury.")

It was and is no less frivolous for Defendant Capozzi to argue that relief in the form of a dismissal was due because the existence of these materials may have prevented him from successfully presenting his intended defense – that he was not in federal custody at the time of his escape. Certainly, the burden of proof and persuasion as to each element of the crime alleged in the indictment, including the nature of the custody of Defendant, has been and remains on the United States in this matter. That said, the Court could not cure the type of "prejudice" of which Defendant Capozzi complains through the use of Fed. R. Crim. P. 16 or by dismissal of the indictment through some other means. The Court cannot make the contract or the Ex Parte Writ "disappear." The Court elected not to exclude them from evidence from the first trial on the facts before it and has not changed its mind on the propriety of that decision.[5] Rather, the Court afforded Defendant Capozzi an ample amount of time to review the materials belatedly

---

[5] The existence of a contract by and between the United States Marshals Service and the Grayson County Detention Center was alleged in the original indictment. The fact of its existence, therefore, could hardly have been a surprise to Defendant Capozzi.

produced by the United States and remains persuaded that such action was sufficient to cure any issues presented by its late production with respect to its use at trial.

**B.   Curative Instruction**

As to Defendant's argument that a mistrial might have been avoided had the Court offered a curative instruction in the style of *McCue*, Defendant concedes that he did not make such a suggestion when asked what the Court should do when the jury indicated that it could not reach a verdict.  He also candidly admits that he would have vigorously opposed the provision of such an instruction.  As to the latter, he theorizes that had the jury been instructed that a federal inmate present in a district on a writ of habeas corpus ad testificandum is, as a matter of law, in the custody of the Attorney General, it would have impermissibly worked a constructive amendment of the original indictment in this matter. The Court is not persuaded that it would have done so, but the Court need not reach a conclusion as no one requested such an instruction.  Indeed, considering the text of the superseding indictment, Defendant's argument is no longer relevant with respect to the provision of *McCue*-style instructions during the trial scheduled for December 21, 2010.

On October 21, 2010, when the Court was faced with a deadlocked jury, Defendant suggested only that the jury should be required to deliberate further.  He made this suggestion,

14

notwithstanding, as he acknowledges in his motion and reply, that the jury had twice indicated that it could not reach a verdict, even after the court had provided the jury with the *Allen* charge. To now suggest that the Court should have provided the jury with a *McCue*-style instruction is to object too little, too late. Furthermore, the Court will not ignore that this argument is offered in the face of its would-be proponent's objection to such an instruction in any event.

At the time of the declaration of mistrial, the Court knew only that Defendant could provide the Court with no viable alternative. The Court, therefore, reached its decision to declare a mistrial and reset this matter for trial. The Court did not do so lightly and declared the mistrial only after careful consideration of all relevant factors, including the written communications from the jury, the results of its poll of the members of the jury in which each of the twelve agreed that further deliberation would not permit them to reach a verdict, the relative lack of complexity represented by the charge of a violation of 18 U.S.C. § 751(a), the length of jury deliberation balanced against the relatively short time that it took to present the evidence during trial, as well as the effects of possible exhaustion and the impact that the coercion of further deliberations might have on the jury. *See In re Ford*, 987 F.2d 334 (6th Cir. 1992) and *United States v. Carraway*, 108 F.3d 745 (7th Cir. 1997), *United States v.*

*Larry*, 536 F.2d 1149 (6th Cir. 1976), *United States v. Bailey*, 444 U.S. 394, 417 (1980).

Faced with a deadlocked jury, this Court did not lightly conclude that declaring a mistrial was the proper action to take, nor is the Court persuaded that it erred when it decided to declare a mistrial.

**III. Conclusion**

Ultimately, Defendant Capozzi cannot demonstrate that the jeopardy that attached in this matter when the first jury was seated has been terminated. For the reasons stated above, Defendant has provided this Court with no reason to conclude that he will be subject to double jeopardy when this matter is tried again on December 21, 2010. The Court's oral announcement of its decision on November 29, 2010, stands.

This the 30th day of November, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge